Jay Rivera
07/28/2022

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MODA INGLESIDE OIL ) | |
| TERMINAL, LLC, ) | C.A. NO. 2:21-CV-39 |
|     Plaintiff, ) | Admiralty |
| ) | Fed. R. Civ. P. 9(h) |
| V. ) | |
| ) | |
| M/T RIVERSIDE, its engines,) | |
| tackle, etc., in rem, ) | |
| M/T NORDIC AQUARIUS, its ) | |
| engines, tackle, etc., ) | |
| in rem, et al., ) | |
|     Defendants. ) | |

_____

VIDEOTAPED ORAL DEPOSITION OF

CAPTAIN JAY RIVERA-BENAVENT

July 28, 2022

_____

VIDEOTAPED ORAL DEPOSITION of CAPTAIN JAY RIVERA-BENAVENT, produced as a witness at the instance of the Defendant, M/T RIVERSIDE, and duly sworn, was taken in the above-styled and numbered cause on the 28th day of July, 2022, from 9:58 a.m. to 3:11 p.m., before SHIRLEY J. MORRISON, CSR in and for the State of Texas, at the Law Offices of Royston, Rayzor, Vickery & Williams, LLP, 802 N. Carancahua, Suite 1300, Corpus Christi, Nueces County, Texas, pursuant to the Federal Rules of Civil Procedure.

Coastal Bend Video & Reporting
361-888-7585

**EXHIBIT 2**

1  by, I believe, your expert and the NORDIC AQUARIUS
2  experts.  I have also reviewed the report of
3  Mr. Higgins that was an engine expert on the -- on
4  the MODA side.  And -- I believe that's it.  I
5  don't -- I don't think there's any other documents
6  that I've reviewed since.
7       Q.   Okay.
8       A.   But none of those documents have changed my
9  opinions.
10      Q.   Okay.  Or conclusions?
11      A.   Or conclusions.
12      Q.   Okay.  Opinions and conclusions are pretty
13 much the same thing?
14      A.   It depends.  Some -- sometimes they're
15 restated in a more conclusive manner, but --
16      Q.   Okay.
17      A.   -- but they are generally --
18      Q.   Synonymous?
19      A.   Yes.
20      Q.   Okay.  Okay.  So you don't have anything,
21 as you sit here today, to add or revise in terms of
22 your opinions or your conclusions --
23      A.   No.
24      Q.   -- to your report?
25      A.   No.

1    Q.   Okay.  Were any of the inland rules of the
2 road violated by either of the vessels in relation to
3 this matter that led or contributed to the incident
4 occurring?
5    A.   So I haven't -- I did not include that in
6 my report.
7    Q.   If you did, would you have anything to add
8 or include?
9    A.   I would say that -- that -- that to a -- to
10 a degree, there was -- Rule 9 was not followed.
11   Q.   And Rule 9 --
12   A.   The narrow-channel rule.
13   Q.   -- in layman's terms says what?
14   A.   It says that a vessel -- well, I don't have
15 the book in front of me.
16   Q.   You don't have to quote it --
17   A.   Okay.
18   Q.   -- but what is it generally?  What's the
19 substance of it?
20   A.   Generally, a vessel that's proceeding
21 through a narrow channel and can only safely proceed
22 down that narrow channel, its passage must not be
23 interrupted or impeded.
24   Q.   Okay.  And is that vessel who's proceeding
25 down the narrow channel the RIVERSIDE?

1  A. Correct.
2  Q. And was it impeded in this case?  Was
3 her -- her transit impeded in this case?
4  A. It's my opinion that the RIVERSIDE had to
5 take action to avoid a collision with -- with the --
6 with the NORDIC AQUARIUS by reducing its speed.  It's
7 also my opinion that other measures could have been
8 done in order to do that that not necessarily are
9 stopping the engine.  But because of the NORDIC
10 AQUARIUS maneuvering ahead of the RIVERSIDE into the
11 navigation channel, the RIVERSIDE experienced, in
12 addition to the engine not starting, the allision.
13  Q. Okay.  So do you agree with this statement
14 that but for the NORDIC AQUARIUS's basically pulling
15 out into the channel ahead of the RIVERSIDE vessel,
16 that the RIVERSIDE vessel wouldn't have had to have
17 given the stop engine order, thus setting off a chain
18 of events that ultimately concluded with the
19 allusion?
20  A. I would -- I would --
21       MR. BAILEY:  Object to form.
22  A. I would say that but for the NORDIC
23 AQUARIUS departing ahead of the RIVERSIDE, it is
24 highly likely, very highly likely that this incident
25 would not have happened.  The RIVERSIDE actually --

1    A.   Correct.
2    Q.   Okay.  I know this was touched upon with
3 Ms. Pettus, and I want to drill down on it a little
4 bit more.  She had originally asked you whether the
5 report contained all of your opinions in this case,
6 and then you said yes.  And then it was, "Well, okay,
7 but do you have any other opinions?"
8         And it's like, "Oh, yes I do, and
9 there's a Rule 9 violation."  You don't even mention
10 Rule 9 anywhere in the four corners -- within the
11 four corners of your report.  Correct?
12   A.   I do not, and I made that very clear when I
13 was answering Ms. Pettus's question.
14   Q.   Right.  So that would be a new opinion that
15 we're hearing for the first time today in terms of
16 your opinion that there was a Rule 9 violation in
17 this case?
18   A.   I -- insofar as my report goes on the four
19 corners of the report, I have not issued any other
20 opinions.  However, in -- in the deposition I was
21 asked how Rule 9 would apply to this, and I answered.
22         MR. BAILEY:  Okay.  I'll object to the
23 nonresponsive portion.
24   Q.   (By Mr. Bailey)  At the time that you
25 drafted your report, did you feel like you had all

1  the information that you needed to put -- to give
2  your opinions in this case?
3       A.   Yes.
4       Q.   Okay.  Is there any information that you
5  asked for but were not provided in -- in the
6  preparation of your report and the preparation of
7  your opinions?
8       A.   I -- I don't believe so, no.
9       Q.   Okay.  Was there anything that you asked to
10 do but were not permitted to do in preparing your
11 analysis and your report?
12      A.   No.
13      Q.   And I'm confident Ms. Pettus asked you this
14 as well.  Well, you reviewed some additional material
15 since the preparation of your report, but they don't
16 alter any of the opinions contained in your report.
17 Correct?
18      A.   That's correct.
19      Q.   All right.  Is it your intention to testify
20 live at trial if this case does go to trial?
21      A.   If it does go to trial and I'm asked to
22 testify, yes.
23      Q.   Okay.  And if you testify at trial or
24 actually even here, I mean, if the judge -- you know,
25 if you don't and, you know, the judge is looking at

1  your deposition testimony, the judge is going to be
2  the fact finder in this case.  There's -- there's no
3  jury, but the judge is the fact finder.  You want him
4  to believe that -- that you're being truthful in this
5  case and in your testimony.  Correct?
6      A.  Correct.
7      Q.  All right.  And you want the judge to
8  believe that, as an expert, you're impartial or
9  looking at things impartially --
10     A.  Yes.
11     Q.  -- true?  Okay.  In other words, you don't
12 view your role as an expert on behalf of the
13 plaintiff, MODA, as, you know, giving you the license
14 to embellish -- embellish facts in their favor?
15     A.  I don't believe that that is the case at
16 all in -- in -- in this.
17     Q.  Okay.  And -- and certainly you don't view
18 your role to, you know, to exaggerate facts that
19 would assist them in -- in proving up their
20 allegations in this case.  Correct?
21     A.  No.  Actually, I believe that -- that my
22 particular expertise in this area is -- is very
23 valuable to the trier of fact.
24          MR. BAILEY:  Okay.  I'll object to the
25 nonresponsive portion.

**EXHIBIT 2**

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    CORPUS CHRISTI DIVISION

 3  MODA INGLESIDE OIL           )
    TERMINAL, LLC,               )   C.A. NO. 2:21-CV-39
 4          Plaintiff,           )   Admiralty
                                 )   Fed. R. Civ. P. 9(h)
 5  V.                           )
                                 )
 6  M/T RIVERSIDE, its engines,  )
    tackle, etc., in rem,        )
 7  M/T NORDIC AQUARIUS, its     )
    engines, tackle, etc.,       )
 8  in rem, et al.,              )
            Defendants.          )
 9

10                   REPORTER'S CERTIFICATION
         DEPOSITION OF CAPTAIN JAY RIVERA-BENAVENT
11                      July 28, 2022

12

13       I, SHIRLEY J. MORRISON, Certified Shorthand

14  Reporter in and for the State of Texas, hereby

15  certify to the following:

16       That the witness, CAPTAIN JAY RIVERA-BENAVENT,

17  was duly sworn by me and that the transcript of the

18  oral deposition is a true record of the testimony

19  given by the witness.

20       I further certify that review and signature of

21  the deponent was requested by the deponent or a party

22  before the completion of the deposition.

23       I further certify that I am neither attorney or

24  counsel for, nor related to or employed by any of the

25  parties to the action in which this testimony is
```

**EXHIBIT 2**

1  taken.  Further, I am not a relative or employee of
2  any attorney of record in this cause, nor do I have a
3  financial interest in the action.
4       SUBSCRIBED AND SWORN to on this the 9th day of
5  August, 2022.

         *Shirley J. Morrison* (signature)

7  _____
   SHIRLEY J. MORRISON, Texas CSR 1057
8  Expiration Date:  4/30/2023
   Coastal Bend Video & Reporting
9  Firm Registration No. 10694
   711 N. Carancahua, Suite 325
10 Corpus Christi, Texas  78401
   (361) 888-7585

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**EXHIBIT 2**